RECEIVED

FEB 2 6 2024

2024R00066/EAB

AT 8:30 _____ M
CLERK, U.S. DISTRICT COURT - DNJ

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Michael A. Shipp |
| v. | : | Crim. No. 24-115-01 (MAS) |
| MERAJ FATIMA | : | 18 U.S.C. §§ 371 and 666(a)(1)(A) |

# INFORMATION

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

**DEFENDANT, ENTITIES, AND BACKGROUND**

1. Defendant MERAJ FATIMA was a Registered Environmental Health Specialist for the City of Trenton, Bureau of Environmental Health ("BEH"), from in or about 2016 to the present. BEH was a subdivision of the City of Trenton, Department of Health and Human Services ("Trenton HHS"). As a Registered Environmental Health Specialist, defendant FATIMA performed, among other duties, inspections of residential properties in and around Trenton for the detection and removal of lead contamination, improvement of air quality, and reduction of other environmental hazards. Defendant FATIMA was certified by the New Jersey Department of Health ("NJ DOH") as a lead inspector.

2. At all times relevant to this Information:

  A. BEH was a department within the City of Trenton. The City of Trenton received benefits in excess of $10,000 in each of the calendar years 2018

through 2022 under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance, within the meaning of Title 18, United States Code, Sections 666(b) and 666(d)(5).

    B. Pursuant to state law, Trenton HHS was required to screen all children less than six years of age for elevated blood lead levels to protect children from adverse health effects due to exposure to lead hazards in residences and in the environment.  When screening of a child revealed that the blood lead level exceeded the permissible amount, Trenton HHS was required to coordinate, oversee, and provide the necessary services to identify lead sources, eliminate a child's lead exposure, and reduce the child's blood lead level below five micrograms per deciliter (g/dL).  As part of these services, a public health nurse was required, among other things, to conduct, along with an inspection team, a home visit of the residence where the child lived.

    C. Generally, the inspection teams conducting the home visits were comprised of a public health nurse and, depending on the size of the property, three to five employees of BEH certified as lead inspectors.  During an inspection, the assigned BEH inspection team tested different areas of the residence for the presence of lead-based paint and leaded dust.  Additionally, Trenton HHS was required to collect soil samples outside of the residence to be tested for the presence of lead.  While some members of the BEH inspection teams examined the residences to test for lead, others on the team, or the public health nurse, interviewed the residents and documented any responses in a questionnaire designed to determine

the source of any lead contamination.

    D.  When lead was identified at the inspected property, Trenton HHS was required to direct the property owner to hire a licensed lead evaluation firm or lead abatement firm to remove the lead hazards from the property.

    E.  Upon completion of abatement at a property, Trenton HHS was required to reinspect the property to determine whether the lead hazards identified in the initial inspection had been satisfactorily eliminated.  Thereafter, the property owner was required to obtain independent clearance testing through the services of a lead inspector certified by the NJ DOH.

    F.  Beginning in or around 2018, Trenton began drawing funds from a State grant for childhood lead testing ("State Childhood Lead Grant") that was awarded to the City of Trenton to conduct lead inspections at residences which had reported having children with elevated levels of lead in their blood.

    G.  Generally, members of BEH performed the lead inspections scheduled by the public health nurse after their normal workday ended at approximately 4:30 p.m., entitling them to compensation for this overtime work above their hourly wage.  Supervisors within Trenton HHS were authorized to approve overtime hours for BEH employees who performed these lead inspections.  Costs associated with the inspection of properties by BEH inspection teams were reimbursable to the City of Trenton through drawdowns from the State Childhood Lead Grant.

    H.  In addition to time sheets reflecting all hours worked, BEH

employees completed a form which recorded any overtime worked during a two-week reporting period. When a BEH employee documented overtime for lead inspection related work, the employee entered "Lead," or otherwise characterized the work as lead inspection related, in the section of the time sheet titled: "Work Performed," and listed the range of hours during which the inspection-related work purportedly occurred in the sections of the overtime sheet titled: "Overtime Start" and "Overtime End." Above the employee signature line of the overtime sheet, a notification stated: "I hereby certify that the time … reflected herein is accurate." Signature lines for "Supervisor" and separately for "Director" fell below a notification stating: "I hereby verify that the time record reflected herein is accurate."

I. A completed overtime form indicated that the employee had performed the work reflected on the form. The City of Trenton received the overtime form signed by the BEH employee, as verified by the employee's supervisor and Director, and, in turn, paid the BEH employee, ordinarily at a rate one-and-a-half times higher than the employee's normal wage.

J. Co-Conspirator 1 was the "Principal Registered Environmental Health Specialist" for BEH. In this capacity, Co-Conspirator 1's duties and responsibilities included overseeing and directing other BEH employees in connection with lead inspections administered under the State Childhood Lead Grant.

4

## THE CONSPIRACY

3. From in or about February 2018 to in or about May 2022, in Mercer County, in the District of New Jersey and elsewhere, defendant

**MERAJ FATIMA**

did knowingly and intentionally conspire and agree with others, including Co-Conspirator 1, to embezzle, steal, obtain by fraud, intentionally misapply, and otherwise without authority knowingly convert to the use of persons other than the rightful owner $5,000 or more in overtime wages, which constituted money owned by, and under the care, custody, and control of the City of Trenton, contrary to Title 18, United States Code, Section 666(a)(1)(A).

### Goal of the Conspiracy

4. It was the goal of the conspiracy for defendant FATIMA, and others, to obtain payments from the City of Trenton for work they did not perform, by fraudulently inflating the overtime hours they claimed to have worked conducting residential lead inspections.

### Manner and Means

5. It was part of the conspiracy that:

   A. Co-Conspirator 1 directed members of BEH to report on time sheets and overtime forms at least three hours of overtime for all lead inspections performed on residential properties, even though they generally completed such inspections in far less time.

   B. On multiple occasions, defendant FATIMA, at Co-

Conspirator 1's direction, falsely recorded on time sheets and overtime forms that she had worked three hours or more of overtime in connection with lead inspections at residential properties in Trenton.

    C. Defendant FATIMA submitted the false and fraudulent time sheets and overtime forms to Co-Conspirator 1, who signed and purported to verify the fraudulent forms before submitting them to the City of Trenton so that defendant FATIMA would be paid. As a result, defendant FATIMA was paid for overtime work that she did not perform.

### Overt Acts

  6. In furtherance of the conspiracy and to effect its object, defendant FATIMA and others committed and caused to be committed the following overt acts, among others, in the District of New Jersey and elsewhere:

    A. On or about August 31, 2021, October 25, 2021, February 15, 2022, and April 12, 2022, in Trenton, defendant FATIMA, at Co-Conspirator 1's direction, falsely represented on multiple overtime forms that she had completed at least three hours of overtime to perform lead inspections when, in fact, defendant FATIMA had not done so.

    B. For each of the inspections on these four dates, Co-Conspirator 1 signed defendant FATIMA's overtime forms, understanding that they were false, and thereby fraudulently authorized the payment of overtime wages to defendant FATIMA.

    C. From in or about February 2018 to in or about May 2022,

defendant FATIMA accepted payments from the City of Trenton for overtime work related to lead inspections that she did not perform, but nonetheless fraudulently claimed that she did, including but not limited to the following payments:

| Approximate Date of Payment to defendant FATIMA | Approximate Amount Paid as a Result of the Fraud |
|---|---|
| 9/16/2021 | $ 82.17 |
| 11/10/2021 | $ 657.40 |
| 03/03/2022 | $ 316.49 |
| 04/28/2022 | $ 271.28 |

In violation of Title 18, United States Code, Section 371.

# FORFEITURE ALLEGATION

1. The allegations contained in this Information are realleged here for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offense of conspiracy to commit fraud, contrary to Title 18, United States Code, Section 666(a)(1)(A), in violation of Title 18, United States Code, Section 371, as charged in this Information, defendant

**MERAJ FATIMA**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461(c), any and all property, real or personal, that constituted and was derived from proceeds traceable to the commission of the above violation, and all property traceable thereto, including, but not limited to, a sum of money equal to $32,524.12 in United States currency, representing proceeds of the offense charged in this Information, as agreed to by the parties under the terms of a plea agreement dated December 4, 2023.

3. If by any act or omission of defendant FATIMA, any of the property subject to forfeiture described in paragraph 2:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of defendant FATIMA up to the value of the above forfeitable property.

*Philip R. Sellinger/by LMC*

PHILIP R. SELLINGER
United States Attorney

Case Number: 24-115-01 (MAS)

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

MERAJ FATIMA

## INFORMATION FOR

18 U.S.C. § 371
18 U.S.C. § 666(a)(1)(A)

Philip R. Sellinger
United States Attorney
for the District of New Jersey

Eric A. Boden
Assistant U.S. Attorney
Trenton, New Jersey
609-989-0564